**Marion BURNS, Plaintiff–Appellee,**

v.

**NEW YORK LIFE INSURANCE CO., Defendant–Appellant.**

**No. 392, Docket 99–7325.**

United States Court of Appeals, Second Circuit.

Argued Nov. 2, 1999.

Decided Feb. 3, 2000.

Michael Delikat, New York, N.Y. (John D. Giansello, Rene Kathawala, Orrick, Herrington & Sutcliffe LLP, on the brief) for Defendant–Appellant.

Stephen J. Hyman, New York, N.Y. (Janet C. Neschis, Deanna R. Waldron, Leavy Rosenweig & Hyman, New York, N.Y., on the brief) for Plaintiff–Appellee.

Before: JACOBS, McLAUGHLIN and SACK, Circuit Judges.

JACOBS, Circuit Judge:

Plaintiff-appellee Marion Burns ("Burns") alleges that he was the victim of race discrimination in the course of his employment with New York Life Insurance Company ("New York Life"). New York Life has moved to compel arbitration of Burns's employment discrimination claims on the ground:

(i) that Burns also worked for New York Life Securities, Inc. and its predecessor in interest ("NYL Securities"), a wholly owned subsidiary of New York Life that had no employees of its own and was staffed by employees (including Burns) seconded to it by New York Life;

(ii) that in 1981, Burns filed a Uniform Application for Securities Industry Registration ("Form U–4"), countersigned by the predecessor of NYL Securities, which was needed for him to sell securities through that firm;

(iii) that the Application form, promulgated by the National Association of Securities Dealers ("NASD"), contained an arbitration clause incorporating by reference the NASD Code of Arbitration Procedure (the "Code"); and

(iv) that the Code (prior to January 1, 1999) provided for arbitration of all "employment related" disputes.

The issue on appeal is whether New York Life, although not itself a direct signatory to the Form U–4, can avail itself of the arbitration provisions under the NASD Code.[1] The district court held that New York Life could not compel arbitration because a claim brought against a "non-member" of the NASD (such as New York Life) is ineligible for arbitration under the Code unless the claim arises from the parent defendant's day-to-day control of a subsidiary NASD member. *See Burns v. New York Life Ins. Co.*, No. 97 CIV. 4559(TPG), 1999 WL 101773, at *4, (S.D.N.Y. Feb.26, 1999).

We affirm the denial of New York Life's motion, but do so on the somewhat different ground that New York Life is not a party that can compel arbitration under the Code. *See Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S*, 943 F.2d 220, 223 (2d Cir.1991) ("[W]e may affirm on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely . . . ."). We therefore do not reach the issue, decided by the district court, as to whether Burns's claim was eligible for submission under the Code.

## BACKGROUND

Marion Burns, an African–American, was first employed by New York Life in 1972 and by the time this suit was filed was the Managing Partner of New York Life's New Jersey Office. Burns alleges that on account of his race, New York Life denied him promotions and interfered in his management of the branch office in an effort to undermine his performance and create a pretext for demotion or termination. The complaint pleads claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1866, 42 U.S.C. § 1981, and analogous state provisions. The complaint was amended on April 12, 1999 after New York Life eliminated Burns's position. New York Life moves to stay the action and compel arbitration under the NASD Code of Arbitration Procedure.

New York Life and its subsidiaries sell life insurance and other financial products. NYL Securities, an indirect, wholly owned subsidiary of New York Life, was staffed entirely by employees of the parent company. As a registered broker-dealer of securities products, NYL Securities is regulated by the Securities and Exchange Commission ("SEC"), the NASD, and state regulatory agencies. NYL Securities is a "member" of the NASD; New York Life is not. Employees of New York Life who work in the sale of securities products through its subsidiary NYL Securities, such as the plaintiff, are required to register as representatives with the NASD.

New York Life is the only defendant in this suit. The complaint pleads that New York Life has engaged in a pattern of discrimination against black employees and (in particular) black managers, and that New York Life foreclosed Burns from opportunities for corporate advancement available to white managers; there is no mention of any officer or employee of NYL Securities, or of any events that took place in the course of business that Burns conducted on behalf of NYL Securities. It is undisputed, however, that Burns's employment entailed daily oversight of employees engaged in securities transactions on behalf of NYL Securities.

*The Arbitration Agreement*

In 1981, while still very much employed by New York Life, Burns became a registered representative of New York Life Variable, a predecessor to NYL Securities. As a condition of registration, Burns filed with the NASD a Uniform Application for

1. Immediate review of an order denying a motion to compel arbitration is taken under the provisions of § 9 U.S.C. 16(a)(1)(A) & (B).

Securities Industry Registration or Transfer ("Form U–4"), which was countersigned by New York Life Variable. The Form U–4 elicited information about Burns's employment and personal history, and contained various general employment provisions to which, by his signature, Burns agreed. One of these was an arbitration clause stating:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register....

The relevant "rules" and "by-laws" in the Form's arbitration clause are those of the NASD, specifically, the NASD Code of Arbitration Procedure (the "Code").

Rule 10101 of the NASD Code expansively defines the issues and subject matters that *may* be arbitrated as follows:

### 10101. MATTERS ELIGIBLE FOR SUBMISSION

This Code of Arbitration Procedures is prescribed and adopted ... for the arbitration of any dispute claim or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company;

(a) between or among members;

(b) between or among members and associated persons;

(c) between or among members or associated persons and public customers, or others.

Rule 10201(a) of the NASD Code in turn describes a subset of issues as to which certain specified parties may *compel* arbitration:

### 10201. REQUIRED SUBMISSION

(a) Any dispute, claim, or controversy eligible for submission under [Rule 10101] between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, *shall be arbitrated* under this Code, *at the instance of:*

(1) a member against another member;

(2) a member against a person associated with a member or a person associated with a member against a member; and

(3) *a person associated with a member against a person associated with a member.*

(emphasis added).[2]

Thus Rule 10101 describes the scope of permissive arbitration as any dispute "arising in connection with the business" of members or arising "in connection with the activities of such associated person(s)," *McMahan Sec. Co. L.P. v. Forum Capital Mkts. L.P.*, 35 F.3d 82, 86 (2d Cir.1994), while Rule 10201 limits the scope of mandatory arbitration to disputes that are initiated by specified classes of persons (a "member" or "a person associated with a member") against specified classes of persons, and that are "between or among members and/or associated persons, and/or certain others." *Id.* Accordingly, unless New York Life is a party that can avail itself of Rule 10201, it has no power to force the present action to arbitration, regardless of whether the substantive dispute is eligible for submission pursuant to Rule 10101.

The NASD By–Laws define a "member" as "any broker or dealer admitted to membership" in the NASD. *See* National Asso-

---

**2.** Effective January 1, 1999, the NASD amended these regulations to specifically eliminate mandatory arbitration of statutory employment discrimination claims.

ciation of Securities Dealers, Inc., NASD By–Laws, Art. I., ¶ 1101(i) (April 1992) ("NASD By–Laws"). The By–Laws define an "associated person of a member" as:

[A] sole proprietor, partner, officer, director, or branch manager of any member, or *any natural person* occupying a similar status or performing similar functions, *or any natural person* engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member....

NASD By–Laws, ¶ 1101(m) (emphasis added).

Burns concedes that he is a "person associated with a member" and it is undisputed that *NYL Securities* is a "member" of NASD. New York Life, however is the only named defendant and the only party that seeks to compel arbitration in this case. Accordingly, the question is whether New York Life, by virtue of its status as the parent of NYL Securities—an indirect, wholly owned subsidiary and "member" of NASD—is a "person associated with a member" that can compel arbitration pursuant to Rule 10201(a)(3).

## DISCUSSION

■ The Federal Arbitration Act ("FAA"), *see* 9 U.S.C. § 1 et seq., requires a federal court to enforce arbitration agreements and to stay litigation that contravenes them. *See* 9 U.S.C. §§ 2 & 3; *McMahan Securities*, 35 F.3d at 85–86. The FAA affords no latitude for discretion, *see Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), and we review a district court's determination as to arbitrability *de novo, see Haviland v. Goldman, Sachs & Co.*, 947 F.2d 601, 604 (2d Cir. 1991). Although "the FAA does not require parties to arbitrate when they have not agreed to do so," *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), arbitration is indicated unless it can be said "with positive assurance" that an arbitration clause is not susceptible to an interpretation that covers the asserted dispute. *Thomas James Assocs., Inc. v. Jameson*, 102 F.3d 60, 65 (2d Cir.1996) (citation omitted).

### (1) "Associated Persons"

■ New York Life maintains that it can compel arbitration under NASD Code Rule 10201(a)(3) because—by virtue of its relationship with NYL Securities—it is a "person associated with a member." The problem is that Article I of the NASD By–Laws defines "persons associated with a member" to exclude corporate entities ("sole proprietor, partner, officer, director, or branch manager of a member, or any natural person ...," etc.). New York Life argues, however, that the definition in the NASD By–Laws is "superseded" by a competing definition in the Securities Exchange Act of 1934 ("SEA"), 15 U.S.C. § 78c(a)(21), set forth below, which definition is broader and would include New York Life as an associated person:

The term "person associated with a member" ... when used with respect to a member of a national securities exchange or registered securities association means ... any person directly or indirectly controlling, controlled by, or under common control with such member....

*Id.* And the term "person" includes a "natural person, *company,* [and] government." *Id.* at § 78c(a)(9).

It is an open question in this Circuit whether the SEA definition overrides the definition in the NASD rules. *See Jameson*, 102 F.3d at 67 (noting that the question was "debatable" but that "[w]e need not enter into this debate"); *Gaghich v. Prudential Ins. Co.*, No. 96–CV–0464E(M), 1997 WL 128269, at *3 (W.D.N.Y. March 10, 1997) (holding that NASD By–Law definitions govern NASD Rules); *Chisolm v. Kidder, Peabody Asset Management, Inc.*, 810 F.Supp. 479, 481 n. 2 (S.D.N.Y.1992) (applying the SEA's definition on grounds

that "the NASD bylaw cannot override the meaning of the Exchange Act"). As two circuits have suggested, nothing in the SEA prohibits a self-regulatory organization (such as the NASD) from using a term for its own purposes (in applying its *own* rules and regulations) in a way that is narrower than the way that term is defined in the SEA. *See Gardner v. Benefits Communications Corp.*, 175 F.3d 155, 162 (D.C.Cir.1999) (broader SEA definition of "associated person" "reinforce[s]" the narrower NASD definition); *Tays v. Covenant Life Ins. Co.*, 964 F.2d 501, 503 (5th Cir.1992) (same).

We agree with the Fifth and D.C. Circuits that the definitions of the SEA do not necessarily control the meaning of the same terms in the NASD's own By–Laws and Rules. Here, the NASD's different definition does not result in any rule or practice that is inconsistent with the statute or any regulatory command of the SEC. Moreover, the SEC reviews and approves all NASD rules and by-laws before they become effective. *See* 15 U.S.C. §§ 78*o*–3 & 78s; *see also Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 233–34, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (holding that "the SEC has specifically approved the arbitration procedures of the ... NASD" and "[n]o proposed rule change may take effect unless the SEC finds that the proposed rule is consistent with the requirements of the Exchange Act"). We think it is safe to assume that the SEC would not have approved the NASD definition of "associated person" if, by construing the term as it does, the NASD exceeded its authority.

■ We hold (1) that the NASD has authority to limit the definition of "associated person" notwithstanding a more inclusive definition of the same term in the SEA so long as doing so does not conflict with any substantive provision of the Act, *see, e.g., Gardner*, 175 F.3d at 162 ("[C]hanges from the [SEA] to the NASD bylaws suggest a desire to limit the NASD definition to natural persons.") (citation and internal quotation marks omitted), and

(2) that (accordingly) New York Life may not avail itself of the SEA's broader definition for purposes of compelling arbitration under the NASD's own provisions.

#### (2) "Certain Other"

■ In the alternative, New York Life argues under Rule 10201(a) that it can compel arbitration as a "certain other." We disagree. One who is a "certain other" may participate in a NASD arbitration, but is not a party who can compel arbitration under the NASD Code. As Rule 10201(a) explicitly provides, claims "between or among associated persons and/or certain others ... *shall be arbitrated* under the Code, *at the instance of:*"

(1) a member against another member;

(2) a member against a person associated with a member or a person associated with a member against a member;

(3) *a person associated with a member against a person associated with a member.*

NASD Code Rule 10201(a) (emphasis added).

New York Life is neither a member (as it concedes) nor a person associated with a person who is (as we have now held), and therefore lacks power to compel arbitration under 10201(a). New York Life's reliance on *Jameson*, 102 F.3d at 66–67, and *McMahan Securities*, 35 F.3d at 87–88, is unavailing here. In both of those cases, an employee, *i.e.*, an associated person, requested arbitration under the NASD Code against a member NASD firm and "certain other" defendants. Under Rule 10201(a) of the Code, there was no doubt as to the arbitrability of the underlying dispute between the employee and the member firm. The issue was whether the non-member defendants could be *joined* as "'proper part[ies] to arbitration under the NASD Code.'" *Jameson*, 102 F.3d at 68 (quoting *McMahan*, 35 F.3d at 88) (alteration in *Jameson*). The posture of both cases was, therefore, quite distinguishable from a situation in which (as here) a party purporting to be an "other" moves to *compel* to arbitration a claim for which there is no

independent basis for abitrability—a power that the Code nowhere confers on "certain others." *See Gardner*, 175 F.3d at 161 ("With [a non-member-firm] as the *sole* defendant, we have no serious doubt in reaching the conclusion that [a registered employee] is not required to arbitrate her claims ....") (emphasis added). Therefore, we hold that even if New York Life satisfies the criteria for a "certain other," *see e.g., McMahan Securities*, 35 F.3d at 88 (establishing three requirements to be met before a certain other can be joined in an arbitration), it does not fall within a class of persons having power to compel arbitration under the NASD Code.

## CONCLUSION

We affirm the denial of New York Life's motion to stay this action and compel arbitration on the grounds (1) that New York Life is not an "associated person" as defined under NASD guidelines; and (2) that even if New York Life was a "certain other" as that term has been defined in this Circuit, "certain others" are not authorized to compel arbitration under the NASD Code. The case is remanded to the district court for further proceedings.