925 A.2d 22 (2007)
393 N.J. Super. 560
John L. ALFANO, Plaintiff-Respondent,
v.
BDO SEIDMAN, LLP, Sidley Austin Brown & Wood, LLP, f/k/a Brown & Wood, LLP, R.J. Ruble, Presidio Advisors, LLC, Presidio Growth, LLC, John Larson, Defendants, and
Deutsche Bank AG, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 13, 2007.
Decided June 15, 2007.
*24 Christine Y. Chi, New York, NY (Dewey Ballantine) of the New York bar, admitted pro hac vice, argued the cause for appellant Deutsche Bank AG, (LoFaro & Reiser, attorneys; Glenn R. Reiser, Hackensack, Lawrence M. Hill (Dewey Ballantine) of the New York Bar, admitted pro hac vice, Seth C. Farber, New York, NY (Dewey Ballantine) of the New York Bar, admitted pro hac vice and Ms. Chi, of counsel; Mr. Reiser, on the brief).
Susan F. Campbell, Columbia, SC (McCutchen, Blanron, Johnson & Barnette) of the South Carolina Bar, admitted pro hac vice, argued the cause for the respondent John F. Alfano (Schiffman, Abraham, Kaufman & Ritter, attorneys; Paul N. Ambrose, Jr., Daniel S. Eichhorn, Hackensack, John P. Freeman, of the South Carolina bar, admitted pro hac vice, T. English McCutchen of the South Carolina Bar, admitted pro hac vice and Ms. Campbell, on the brief).
Before Judges KESTIN, GRAVES and LIHOTZ.
The opinion of the court was delivered by
LIHOTZ, J.T.C. (temporarily assigned).
Defendant Deutsche Bank AG (DB) appeals, on leave granted, from an October 6, 2006 Law Division order denying its motion to compel arbitration of the dispute initiated by plaintiff John L. Alfano. We are asked to determine whether resolution of the parties' dispute is subject to arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C.A. § 1-16.

I.
Alfano alleges that in 1998, he was solicited by his accountants, BDO Seidman, LLP (accountants), to participate in a tax strategy to shelter a $150 million capital gain he realized from the sale of his business. The plan, known as an off-shore portfolio investment strategy (OPIS), was effectuated through investment advisor defendants Presidio Advisors, LLC, and Presidio Growth, LLC (collectively, Presidio). OPIS required Alfano to enter into a series of transactions to borrow funds from DB and then buy stock and options in DB, individually and through a Cayman Islands limited partnership, for which he would realize more than a $100 million loss to offset the gain realized from the sale of his business. Alfano asserts he was told the investment was unique to his needs and *25 afforded him the necessary tax avoidance to shelter his gain.
The accountants introduced Alfano to attorney R.J. Ruble of Sidley Austin Brown & Wood, LLP, formerly Brown & Wood (attorneys), who provided legal assistance and a tax opinion letter to Alfano, which he suggests represented that OPIS fully complied with federal tax laws.
The Internal Revenue Service (IRS or Service), after auditing Alfano, ascertained that the tax shelter was "abusive," and disallowed most of the claimed costs and losses, requiring Alfano to pay capital gains taxes, interest and penalties. Ultimately, Alfano explains, he learned that OPIS was a nationally marketed, generic, unregistered, abusive tax shelter, that defendants had promoted on approximately 600 prior occasions. Alfano maintains that neither the accountants nor attorneys issued independent tax or legal advice to him regarding the legitimacy of the tax shelter because they had designed the scheme and received fees for its promotion.
Alfano's complaint recites causes for relief which include: fraud, constructive fraud, aiding and abetting fraud, consumer fraud, negligence, malpractice, violation of the New Jersey Racketeer Influenced and Corrupt Organizations Act (RICO), N.J.S.A. 2C:41-1 to -6.2, civil conspiracy, breach of fiduciary duty, breach of contract, and unjust enrichment. Alfano seeks indemnification, fee disgorgement, money damages and other relief arising from [d]efendants' development, promotion and implementation of a tax strategy" which caused him to expend excessive fees and to incur an income tax liability.

II.
DB filed a motion to compel arbitration based upon the arbitration clause contained in the October 14, 1998 Customer Account Agreement between Deutsche Bank Securities, Inc. (DBSI) and Alfano. DB, although not a signatory to the Customer Account Agreement, asserts DBSI was acting as DB's agent in carrying out the transactions, which was a fact known and acknowledged by Alfano. Based upon this agency DB seeks to require Alfano to abide by his agreement to arbitrate.
The DBSI securities account Alfano opened was used to buy and sell the DB stock and options. The Customer Account Agreement advised Alfano that DBSI would "act as brokers for the undersigned [Alfano] in the purchase of sales of securities and/or commodities [sic]." The agreement's arbitration provision states:
The UNDERSIGNED AGREES, and by carrying an Account of the Undersigned you agree, that except as inconsistent with the foregoing, all controversies which may arise between us concerning any transaction of construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to this date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be determined pursuant to the rules then in effect of the National Association of Securities Dealers, Inc. [(NASD)]. . . . The award of the arbitrators or of the majority of them, shall be final and judgment upon the award rendered may be entered in any court, state, or federal, having jurisdiction.
DB maintains it is the parent company and DBSI is a separately incorporated indirect subsidiary. A letter dated December 15, 1998, signed by Alfano and a managing director of DB, disclosed that DB was "not registered as a broker-dealer under the U.S. Securities Exchange Act of 1934. [DBSI] has acted as [DB's] agent in *26 connection with this transaction." DB asserts that because DBSI is its agent, DB can compel arbitration.
The Law Division orders dated October 6, 2006, denied the motion to compel arbitration, and the accompanying request to stay the litigation pending arbitration. Leave to appeal was granted by order dated November 15, 2006. The trial court submitted written findings of fact and conclusions of law on November 30, 2006. See R. 2:5-1(b) and secondarily R. 1-7-4.

III.
On appeal, DB contends that the motion judge erred in the following conclusions: (1) that DB could not enforce the arbitration clause in the Customer Account Agreement between DBSI and Alfano, through principles of agency; (2) that the FAA does not apply to Alfano's transactions with DB; and (3) that the arbitration clause is unenforceable because neither DB nor Alfano are NASD members. DB argues that arbitration is mandatory and applies to all claims raised by Alfano against DB, necessitating a stay of the litigation until arbitration is concluded.
Alfano counters each argument. He contends that although liberal federal policy favors arbitration agreements, the FAA permits courts to refuse enforcement to the extent "such grounds . . . exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2.
In our review of the denial of DB's motion to compel arbitration and to stay the pending litigation, we must determine: (1) whether a valid agreement requires the parties to arbitrate disputes; (2) whether NASD arbitration is mandatory under the agreement, so that the arbitration clause becomes void if no party is an NASD member; (3) if not, whether arbitrability of the dispute is governed by the FAA; (4) what claims, if any are subject to arbitration; and (5) if arbitration under the FAA is required, whether the balance of the litigation must be stayed.

A.
The first consideration is whether the arbitration provision contained in the Customer Account Agreement between DBSI and Alfano encompasses plaintiff's claims against DB. DB seeks to enforce the arbitration agreement, arguing that the purchase and sale of securities was performed by DBSI as DB's disclosed agent; Alfano is a signatory to the arbitration agreement; and the securities transactions were at the heart of Alfano's claims against DB. Further, Alfano's choice not to name DBSI as a defendant cannot allow him to "escape the force of the[ ] signed documents," requiring him to engage in arbitration.
DB identifies those paragraphs of Alfano's complaint which implicate the Customer Account Agreement, including: "the OPIS investment involved stock purchases in [DB];" that DB was the sole or primary lender for the transaction; and that DB "handled [Alfano's] transactions as the broker" functioning "as a broker-dealer, as well as a banking institution in its dealings with [Alfano] and as such, it owed duties to sell only suitable investments and securities [and] to know the investments it was selling. . . ." DB contends that the transaction documents clearly disclosed the relationship between DB and DBSI, and when read together, the Customer Account Agreement's arbitration clause is applicable to this matter.
The motion judge determined that "none of the factual allegations [in Alfano's complaint] are based on any controversy as between [p]laintiff and DBSI; they are between, inter alia, [p]laintiff and [DB]" and that DB was "expressly excluded from *27 the duties of the customer agreement" so that "there is no agreement between [Alfano] and [DB] which contains an arbitration clause." The motion judge further made "a factual determination that no . . . agency relationship exists" between DB and DBSI as a "mere parent-subsidiary relationship does not, without more, create the relationship of principal/agent or alter ego." As a result, the motion judge concluded that the arbitration contract between DBSI and Alfano may not be enforced by DB, a non-signatory to the agreement. See Bel-Ray Co. v. Chemrite Ltd., 181 F.3d 435, 444 (3d Cir.1999).
Binding arbitration is strictly a matter of contract. Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 472, 109 S.Ct. 1248, 1252, 103 L.Ed.2d 488, 496 (1989). It is undisputed that DB was not an actual signatory to an arbitration agreement, and Alfano and DB have not otherwise consented to arbitration. Therefore, DB cannot compel Alfano to arbitrate, unless the arbitration benefits under the contract Alfano executed with DBSI somehow extends to DB "based on traditional principles of contract and agency law." E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 195 (3d Cir.2001); Wasserstein v. Kovatch, 261 N.J.Super. 277, 286, 618 A.2d 886 (App.Div.), certif. denied, 133 N.J. 440, 627 A.2d 1145 (1993).
Agency has been applied to bind nonsignatories to arbitration agreements. See E.I. DuPont de Nemours & Co., supra, 269 F.3d at 195; In re Prudential Ins. Co. of Am. Sales Practice Litig., 133 F.3d 225, 229 (3d Cir.1998); Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, 7 F.3d 1110, 1122 (3rd Cir.1993); Mutual Benefit Life Ins. Co. v. Zimmerman, 783 F.Supp. 853, 865-66 (D.N.J.), aff'd, 970 F.2d 899 (3d Cir.1992); Bruno v. Mark MaGrann Assocs., Inc., 388 N.J.Super. 539, 547, 909 A.2d 768 (App.Div.2006); Wasserstein, supra, 261 N.J.Super. at 286, 618 A.2d 886. When one corporation acts as the agent of a disclosed principal corporation, the latter corporation may be liable on contracts made by the agent. See Phoenix Canada Oil Co. v. Texaco, Inc., 842 F.2d 1466, 1477 (3d Cir.1988) (citing Restatement (Second) of Agency § 144 (1958)). "Liability may attach to the principal corporation even though it is not a party named in the agreement." Ibid. (citing Restatement (Second) of Agency §§ 147, 149 (1958)).
Alfano entered into the Customer Account Agreement with DBSI, which brokered the purchase of securities because DB could not accomplish the role of purchasing and selling the stock. DBSI, although an independent corporate entity, assumed the role of DB's agent, and Alfano used the DBSI account to buy and sell DB securities. Alfano could not have engaged in OPIS without opening an account with DBSI and consequently, executing the Customer Account Agreement. Contrary to his suggestion that "Alfano is not invoking the terms of the Customer Account Agreement against DB," we determine that the purchase of the DB stock and options was integral to Alfano's pled causes of action; Alfano must rely on the DBSI transaction to assert his claims against DB. Alfano's complaint recites the acts of the broker, which was DBSI acting as agent for DB. Had Alfano not purchased the stock, Alfano could not have employed the OPIS strategy and no cause of action against any defendant would arise. See Amato v. KPMG LLP, 433 F.Supp.2d 460, 484-85 (M.D.Pa.), order vacated in part on reconsideration on other grounds, 2006 WL 2376245, 2006 U.S. Dist. LEXIS 57091 (M.D.Pa.2006). We conclude an agency relationship between *28 DB and DBSI is established, allowing DB to seek enforcement of Alfano's agreement to arbitrate claims within the provisions of the DBSI Customer Account Agreement.
It does not go unnoticed that other reported decisions examining a failed OPIS investment transaction similar to that filed by Alfano have ordered arbitration by extending the DBSI Customer Account Agreement arbitration clause to the claims against DB because DBSI was additionally a named defendant. See Reddam v. KPMG LLP, 457 F.3d 1054, 1061 (9th Cir.2006); Amato, supra, 433 F.Supp.2d at 482; Chew v. KPMG, LLP, 407 F.Supp.2d 790, 802 (S.D.Miss.2006). We agree with DB that Alfano should not be permitted to avoid the practical consequences of his agreement to arbitrate by declining to name DBSI as a defendant in this action, yet implicate the broker's actions to establish his claim. To do so would circumvent the strong federal and state policy favoring the use of arbitration when agreed to by the parties. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765, 785 (1983); Barcon Assocs., Inc. v. Tri-County Asphalt Corp., 86 N.J. 179, 186, 430 A.2d 214 (1981).

B.
The trial court also denied the request for arbitration citing the clause in the October 18, 1998 Customer Account Agreement, which required arbitration to be determined under the "NASD rules then in effect." Relying on Burns v. N.Y. Life Ins. Co., 202 F.3d 616, 619 (2d Cir. 2000), the trial court concluded NASD had no jurisdiction to conduct arbitration because neither Alfano, DB, nor any other defendant were NASD members.
In Burns, plaintiff filed an employment discrimination action against his employer, New York Life. Id. at 617. To maintain his status as a securities dealer, Burns had submitted a Uniform Application for Securities Industry Registration or Transfer ("Form U-4") with the NASD, which was countersigned by New York Life Variable, a subsidiary of New York Life. Ibid. That agreement contained an arbitration clause requiring arbitration of disputes "under the rules, constitutions, or by-laws of the organization with which I register . . ." referring to the NASD. Id. at 619. The NASD rules require arbitration only if the dispute is between NASD "members" or "persons associated with a NASD member." Id. at 618-19; see also NASD Code, § 10201(a) (stating that "a dispute, claim or controversy . . . between or among members and/or associated persons, and/or certain others . . . arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under [the NASD] Code."). The court determined that New York Life was not a NASD member as listed in the NASD by-laws, so it could not compel NASD arbitration of Burn's suit. Id. at 622.
Two additional circuit courts have addressed the issue of whether a parent corporation qualifies as a "person associated with a member" under the NASD Code, and each has concluded that the term "person" used in the NASD regulations covers only natural persons, and not corporate entities. See Gardner v. Benefits Commc'ns Corp., 175 F.3d 155, 162 (D.C.Cir.1999); Tays v. Covenant Life Ins. Co., 964 F.2d 501, 503 (5th Cir.1992); see also Mehling v. N.Y. Life Ins. Co., 163 F.Supp.2d 502, 511 (E.D.Pa.2001).
These cases, like Burns, involved employment discrimination actions and the arbitration clause contained in the U-4 form requiring NASD arbitration of the plaintiffs' claims. The nature of the claims in Burns, Gardner, and Tays, as *29 well as the arbitration language in the U-4 agreement itself, make these decisions distinguishable from the case at hand. The conclusion that the U-4 arbitration provision did not apply to the respective plaintiff's employment discrimination claims resulted because the contract language applied only to disputes covered by NASD rules. Perhaps because of the employers' repeated attempts to utilize the U-4 agreement to arbitrate employee discrimination claims, § 10201 of the NASD rules have since been amended to eliminate mandatory arbitration of statutory employment discrimination claims, reinforcing the special nature of these disputes.
Another view interpreting an arbitration clause, which stated that arbitration should be determined by NASD rules, was articulated by the Ninth Circuit in Reddam, supra, 457 F.3d 1054. Reddam is a case similar in its facts to this matter. After a flawed tax avoidance strategy did not shield Reddam's capital gain, suit was filed, which named many of the same defendants found in this litigation. Id. at 1057. The court reviewed the same arbitration clause in the Customer Account Agreement between Reddam and DBSI as presented in this case to answer the question of whether FAA arbitration was mandatory. Ibid. The District Court initially agreed that the action was subject to NASD arbitration. Ibid. Prior to appearing before the NASD, Reddam amended the pleadings and deleted all reference to DBSI in its complaint, and then argued DBSI was not a party, so the NASD did not have jurisdiction. Ibid. The NASD declined to take jurisdiction to arbitrate because no named party was a member or associated person of the NASD. Ibid. The District Court then reversed its prior determination, concluding the claims were no longer subject to arbitration. Ibid.
On appeal, the Ninth Circuit, determined the arbitration clause in the DBSI Customer Account Agreement was not an exclusive forum selection clause, stating:
[W]e cannot agree that the customer agreement involved here became unenforceable between the parties when the NASD bowed out. There is no evidence that naming of the NASD was so central to the arbitration agreement that the unavailability of that arbitrator brought the agreement to an end. See Brown[ v. ITT Consumer Financial Corp.], [supra,] 211 F.3d [1217]at 1222[(2000)]; (other citations omitted). Something more direct is required before we, in effect, annihilate an arbitration agreement.
[Id. at 1061.]
The district court's conclusion that it lacked jurisdiction was reversed by the circuit court as "the evidence does not support a determination that the parties agreed to resile from arbitration if the implicitly named arbitratorthe NASD did not consent to act." Ibid.
Our review of this issue is de novo. A "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995). In this matter, we conclude that the view expressed by the Second Circuit in Burns, which followed Gardner and Tays, is too narrow, particularly when comparing the nature of the suits and the specific arbitration clauses at issue. Alfano's complaint asserts tort and contract claims involving securities transactions, not employment discrimination claims. Also, the arbitration clause contained in the DBSI securities account agreement with the broker-dealer in this case differs significantly from the provision found in the U-4 form executed by the *30 employees in Burns, Gardner, and Tays. The arbitration agreement at hand requires disputes to be arbitrated, and then states the method of arbitration would follow NASD rules; the agreement did not limit arbitration to disputes covered by NASD rules, as was the case with the U-4 agreement. The Customer Account Agreement arbitration clause is not dependent on the NASD accepting jurisdiction. Adopting the reasoning of the Ninth Circuit as expressed in Reddam, we conclude that the unavailability of the NASD to arbitrate this matter will not defeat the applicability of arbitration where the arbitration contract is otherwise enforceable and applicable to this dispute.

C.
The lower court also concluded that the FAA did not apply to this matter; instead it was state law that applied. The motion judge did not elaborate on the rationale supporting his conclusion to reject application of the FAA. An arbitration agreement reflects the parties' intention to adhere to an orderly process of alternative dispute resolution. Ortho Pharmaceutical Corp. v. Amgen, Inc., 882 F.2d 806, 812 (3d Cir.1989). The FAA is implicated when
[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
[9 U.S.C.A. § 2.]
For the FAA to apply here, we must first find that the contract containing the arbitration provision "evidences a transaction involving commerce." Ibid.; see also Goodwin v. Elkins & Co., 730 F.2d 99, 108-09 (3d Cir.), cert. denied, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984); Gras v. Assocs. First Capital Corp., 346 N.J.Super. 42, 47, 786 A.2d 886 (App.Div.2001), certif. denied, 171 N.J. 445, 794 A.2d 184 (2002). The United States Supreme Court has held that the FAA's definition of contracts "involving commerce" should be construed broadly rather than narrowly and has concluded that this language "extend[s] the Act's reach to the limits of the Congress' Commerce Clause power[.]" Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 268, 115 S.Ct. 834, 836, 130 L.Ed.2d 753, 760 (1995); see also Allen v. World Inspection Network Int'l, Inc., 389 N.J.Super. 115, 126, 911 A.2d 484 (App. Div.2006).
A nexus to interstate commerce is found when citizens of different states engage in the performance of contractual obligations in one of those states because such a contract necessitates interstate travel of both personnel and payments. See Crawford v. W. Jersey Health Sys., 847 F.Supp. 1232, 1240 (D.N.J.1994); see also Roadway Package Sys., Inc. v. Kayser, 257 F.3d 287, 292 (3d Cir.2001); Mesa Operating Ltd. P'ship v. Louisiana Intrastate Gas Corp., 797 F.2d 238, 243 (5th Cir.1986). Alfano is a New Jersey resident and DB is a German corporation, with an office in New York. The parties met in Manhattan, and the transactions involved investments in (1) foreign Deutsche Bank stock and options, (2) a Cayman Island limited partnership, (3) a Cayman Island corporation, and (4) a Delaware company. The securities transactions at issue involved interstate and international commerce. The arbitration agreement between the parties unquestionably is governed by the FAA, notwithstanding the filing of the action in state court. See Hojnowski v. Vans Skate Park, 187 N.J. 323, 341-42, 901 A.2d 381 (2006); Liberty Mut. Ins. Co. v. Open MRI of Morris & Essex, L.P., 356 *31 N.J.Super. 567, 581-82, 813 A.2d 621 (Law Div.2002).

IV.
Understanding that DB may enforce Alfano's agreement to arbitrate, we next examine the scope of arbitrable issues. As previously noted, the Customer Account Agreement invokes arbitration to "all controversies which may arise between us concerning any transaction of construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof." The arbitration clause specifically covers the use of Alfano's securities account, and generally, includes all matters related to or arising out of that account. Alfano argues his claims sound in tort, making the contractual arbitration clause inapplicable to this dispute.
Alfano's complaint does allege various actions against DB for fraud, civil conspiracy, negligence, and breach of fiduciary duty, along with claims for breach of contract. Scrutiny of plaintiff's causes pled, however, reveals that the tort allegations relate directly to the relationship between the parties and DB's role in effectuating the stock purchases for the OPIS strategy. More specifically, the claims alleged impact DB's role as the broker-dealer and Alfano's position as the client regarding whether DB fulfilled the duties assigned to a broker-dealer in the performance of the securities transactions. See Jansen v. Salomon Smith Barney, Inc., 342 N.J.Super. 254, 258, 776 A.2d 816 (App.Div.2001).
As a general rule, courts have construed broadly worded arbitration clauses to encompass tort, as well as contract claims. Bleumer v. Parkway Ins. Co., 277 N.J.Super. 378, 402-08, 649 A.2d 913 (Law Div.1994). The affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism to resolve disputes. Martindale v. Sandvik, Inc., 173 N.J. 76, 92, 800 A.2d 872 (2002); Barcon, supra, 86 N.J. at 186, 430 A.2d 214. We determine that the broad provision of the Customer Account Agreement should be interpreted in the context of the strong judicial presumption favoring arbitration, so that doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration, over litigation. Moses H. Cone Mem'l Hosp., supra, 460 U.S. at 24, 103 S.Ct. at 941, 74 L.Ed.2d at 785; Crawford v. West Jersey Health Sys., 847 F.Supp. 1232, 1242 (D.N.J.1994); Quigley v. KPMG Peat Marwick, LLP., 330 N.J.Super. 252, 270, 749 A.2d 405 (App.Div.), certif. denied, 165 N.J. 527, 760 A.2d 781 (2000); see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); cf. Singer v. Commodities Corp., 292 N.J.Super. 391, 405-07, 678 A.2d 1165 (App.Div. 1996).
The DBSI Customer Account Agreement arbitration clause has been interpreted as being broad enough to encompass tortious claims similar to those alleged by Alfano. All claims seek money damages, a matter well-suited for arbitration. See, e.g., Amato, supra, 433 F.Supp.2d at 484-85 (noting that the broad language of an identical arbitration clause encompassed all disputes arising between the signatories); Chew, supra, 407 F.Supp.2d at 797.
We recognize that the New Jersey Supreme Court has articulated certain limits to enforcement of broadly worded arbitration clauses in the special area of an employee's rights against an employer. See Leodori v. CIGNA Corp., 175 N.J. 293, 302, 814 A.2d 1098 (2003) (arbitration clause in employee handbook found not to be employee's express waiver of right to utilize courts to pursue CEPA claim); Martindale v. Sandvik, Inc., 173 N.J. 76, 95-96, 800 A.2d 872 (2002) (clear waiver-of-rights provision in employee contract of *32 employment required arbitration of disputed claims); Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 127, 773 A.2d 665 (2001) (LAD claim not subject to arbitration due to ambiguity of arbitration agreement and because statute contains choice of forum clause). We conclude that these determinations do not impact the matter before us, which does not involve plaintiff's enforcement of statutory employment claims.
Accordingly, in light of the language of the broad arbitration provision in the Customer Account Agreement signed by Alfano, and the fact that the claims against DB relate to securities purchased in the OPIS strategy, we cannot state "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Miron v. BDO Seidman, 342 F.Supp.2d 324, 328 (E.D.Pa.2004) (quoting AT & T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648, 656 (1986)); First Liberty Inv. Group v. Nicholsberg, 145 F.3d 647, 653 (3d Cir. 1998). Accordingly, we conclude that all claims asserted against DB fall within the broad scope of the arbitration clause and agree that Alfano must abide by his agreement.

V.
The final question is whether the remainder of the Law Division action should be stayed pending the arbitration between Alfano and DB. Under section 3 of the FAA, the court must stay an arbitrable action pending its arbitration. 9 U.S.C.A. § 3. Although not mandatory, where significant overlap exists between parties and issues, "third party litigation [that] involves common questions of fact result in a stay of the entire action pending arbitration." See Crawford, supra, 847 F.Supp. at 1243. Under the FAA an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement. Barrowclough v. Kidder, Peabody & Co., 752 F.2d 923, 938 (3d Cir.1985). "[U]nless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted." Jansen v. Salomon Smith Barney, Inc., 342 N.J.Super. 254, 257-58, 776 A.2d 816 (App.Div.2001) (quoting Wick v. Atl. Marine, Inc., 605 F.2d 166, 168 (5th Cir.1979)); Fastenberg v. Prudential Ins. Co. of Am., 309 N.J.Super. 415, 419, 707 A.2d 209 (App.Div.1998).

VI.
We, therefore, reverse the Law Division's order as we conclude that the Customer Account Agreement arbitration clause requires arbitration of the dispute between Alfano and DB. The litigation shall be stayed pending the arbitration, which shall be expeditiously scheduled and concluded.
Reversed.