**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1133-23

TYRELL SPRIGGS, GISELLE
SANTOS, TASHYRA WALLACE,
and DEIDRE SMITH,

     Plaintiffs-Appellants,

v.

GARDENVIEW OPCO, LLC,
d/b/a CEDAR GROVE
RESPIRATORY AND NURSING
CENTER, ATLAS HEALTHCARE,
MIRANDA GENTHER, and
VIRGINIA TRICKETT,

     Defendants-Respondents.

_____

        Submitted October 17, 2024 – Decided December 6, 2024

        Before Judges Currier and Marczyk.

        On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-0495-23.

        Zeff Law Firm, LLC, attorneys for appellants (Gregg L. Zeff, of counsel; Derek J. Demeri, of counsel and on the briefs).

Fox Rothschild LLP, attorneys for respondents (Richard I. Scharlat and Kelly A. Quinn, of counsel and on the brief).

Schorr & Associates, PC, attorneys for amicus curiae National Employment Lawyers Association – New Jersey (Alan H. Schorr, of counsel and on the brief).

PER CURIAM

Plaintiffs Tyrell Spriggs, Giselle Santos, Tashyra Wallace, and Deidre Smith appeal from the trial court's November 26, 2023 order granting defendants Gardenview OPCO, LLC d/b/a Cedar Grove Respiratory and Nursing Care Center (Cedar Grove), Atlas Healthcare (Atlas), Miranda Genther, and Virginia Trickett's motion to compel arbitration. Based on our review of the record and the applicable legal principles, we affirm.

## I.

We derive the facts from plaintiffs' complaint. Cedar Grove is a licensed long-term care facility located in Williamstown. Plaintiffs all began working for Cedar Grove between August 2021 and January 2022. Atlas acted "as an agent of . . . Cedar Grove" and provided healthcare management services and was plaintiffs' "joint employer." Genther and Trickett worked for Cedar Grove as a human resources manager and director of nursing, respectively.

Plaintiffs all executed arbitration agreements with Cedar Grove upon commencing their employment. The agreement, in pertinent part, provided:

> If the parties do not . . . agree to . . . [m]ediation[] or [if] the [m]ediation is not successful . . . both [plaintiffs] and [Cedar Grove] agree to submit any and all disputes arising out of, or relating to, [plaintiffs'] employment with [Cedar Grove], and/or the termination of that employment, to arbitration . . . . BOTH [PLAINTIFFS] AND [CEDAR GROVE] FOREVER GIVE UP ALL RIGHTS TO CIVIL COURT TRIAL BY JUDGE OR JURY . . . .

Cedar Grove hired Mario Torres, who is not a party to this litigation, in February 2022, as a temporary nurse's aide. Shortly thereafter, he and Genther, who is Trickett's daughter, allegedly began a relationship. Torres "repeatedly bragged about his sexual encounters with . . . Genther" in front of plaintiffs. Plaintiffs further contend Torres and Genther acted inappropriately in front of them.

Torres repeatedly referred to women as "b[*****]s," and made derogatory race-based comments to black patients in front of plaintiffs. He allegedly called Spriggs, who is openly gay, a "f[****]t." Torres also allegedly called Santos a "n[****]r." Wallace alleges Torres called her a "black b[***]h" and threatened to hit her. Moreover, Torres allegedly used the terms "b[***]h" and "n[****]r" in front of Smith. He also threatened plaintiffs with physical violence if anyone

attempted to address his behavior, and he would target anyone who made any complaints by engaging in further harassing behavior.

Plaintiffs allege they were terminated after complaining of Torres' conduct. They allege they "made repeated complaints of unlawful harassment, discrimination, and . . . retaliation" to their employer and specifically to Trickett regarding Torres, but she failed to take any action because of her relationship with Genther. Plaintiffs also contend Trickett retaliated against them.[1]

The complaint asserts various causes of action under New Jersey's Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -50, New Jersey's Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14, and other employment-related claims.

Defendants moved to stay or dismiss the complaint and compel individual arbitration as to all four plaintiffs. On November 26, 2023, the trial court granted defendants' motion. The court stayed the proceedings pending arbitration. This appeal followed.

---

[1] Plaintiffs contend Torres was not fired until he allegedly sexually assaulted Spriggs' sister, who was also employed by Cedar Grove.

4

II.

Plaintiffs contend the arbitration provision is unenforceable and preempted by federal law. Alternatively, they argue the trial court erred in enforcing the agreement because they did not assent to arbitrate with defendants Atlas, Genther, and Trickett, and these defendants were not intended beneficiaries of the arbitration agreement. They further assert the court misapplied agency law in enforcing the arbitration agreement.

Prior to addressing plaintiffs' arguments challenging the court's order, we summarize the principles that guide our analysis. "We review de novo the trial court's judgment dismissing the complaint and compelling arbitration." Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 131 (2020). "Whether a contractual arbitration provision is enforceable is a question of law, and we need not defer to the interpretive analysis of the trial . . . courts unless we find it persuasive." Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020) (quoting Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019)). We also review federal preemption questions de novo. Hejda v. Bell Container Corp., 450 N.J. Super. 173, 186-87 (App. Div. 2017).

"The Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1-16, and the nearly identical New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, enunciate

federal and state policies favoring arbitration." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 440 (2014). Pursuant to the FAA, courts must "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." Id. at 441 (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)).

In reviewing orders compelling arbitration, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013); see also Flanzman, 244 N.J. at 133 ("[T]he affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes." (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002))). Arbitration, as a favored means for dispute resolution, is not, however, "without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001).

A.

Plaintiffs rely on the recently enacted[2] Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA), 9 U.S.C. §§ 401-02. The EFAA amends the FAA, and, in relevant part, states:

> [A]t the election of the person alleging conduct constituting a sexual harassment dispute or sexual

_____

[2] The statute was signed into law in March 2022.

assault dispute . . . , no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal . . . or State law and relates to the sexual assault dispute or the sexual harassment dispute.

[9 U.S.C. § 402(a).]

Plaintiffs contend the arbitration agreement here is preempted by the EFAA and thus is unenforceable as to all defendants. Plaintiffs assert their complaint "expressly allege[s] conduct that constitutes sexual harassment under NJLAD" and that they engaged in protected activity in opposing this sexual harassment, which resulted in defendants' retaliatory actions. Plaintiffs argue they "elected" to allege conduct that constitutes sexual harassment, and therefore, the entire "predispute arbitration" agreement is unenforceable.

The National Employment Lawyers Association – New Jersey (NELA-NJ) similarly asserts as amicus that the trial court erred in enforcing the arbitration agreement that was invalid pursuant to the EFAA.[3] NELA-NJ acknowledges this issue was not properly raised before the trial court. It contends that although it was not addressed by the court, this issue goes to the

---

[3] NELA-NJ takes no position regarding plaintiffs' other arguments concerning whether the arbitration agreement is enforceable against Atlas, Genther, and Trickett, who were not signatories to the agreement.

court's jurisdiction or involves a matter of public importance and should not bar our review. Amicus further argues that plaintiffs "elected" to "pursue litigation rather than arbitration" by virtue of their filing a lawsuit, and the protections of the statute were triggered by the filing of this litigation.

Defendants maintain that because plaintiffs did not raise the EFAA issue before the trial court, they cannot raise it now for the first time on appeal. Defendants assert that because plaintiffs "chose not to" raise the EFAA issue to the trial court, it did not have an opportunity to rule on the issue, and we are unable to perform our "core function of determining whether . . . the trial court made an error below." Furthermore, they posit that allowing plaintiffs to raise the EFAA argument for the first time on appeal would "improperly reward [plaintiffs] for violating procedure."[4]

"Generally, an appellate court will not consider issues, even constitutional ones, which were not raised below." State v. Galicia, 210 N.J. 364, 383 (2012).

---

[4] Defendants also assert that plaintiffs' sex-based discrimination claims in their complaint are insufficient to maintain a hostile work environment claim under the NJLAD, and thus do not constitute a sexual harassment dispute under the EFAA. Plaintiffs and NELA-NJ both dispute defendants' argument and contend plaintiffs' complaint clearly alleges sexual harassment for the purposes of the EFAA statute. Because we conclude plaintiffs did not properly raise the EFAA issue before the trial court, we need not address whether the complaint sufficiently pled conduct constituting sexual harassment under 9 U.S.C. § 402(a).

"For sound jurisprudential reasons, with few exceptions, 'our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available.'" State v. Witt, 223 N.J. 409, 419 (2015) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)). Appellate courts do not "consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).

Because plaintiffs did not seek to invoke the protections of the EFAA before the trial court, we decline to address this issue.[5] The trial court was not given the opportunity to interpret or evaluate the application of EFAA to plaintiffs' complaint. Therefore, we have no record to review.

Moreover, the EFAA, contrary to plaintiffs' and NELA-NJ's assertions, does not automatically invalidate all predispute arbitration agreements. Rather, the statute provides that such agreements may be voided "at the election of the

---

[5]  We also decline to address the arguments raised in section D. of plaintiffs' brief as these issues were also not properly raised before the trial court.

person alleging conduct constituting a sexual harassment dispute." 9 U.S.C. § 402(a) (emphasis added). Plaintiffs did not elect to void the agreement, even when faced with a motion to compel arbitration. The EFAA does not categorically require the enforcement of its provisions when a plaintiff does not invoke their right to "elect[]" to void the agreement. 9 U.S.C. § 402(a). We are also unpersuaded that plaintiffs "elected" to invoke the protections of the statute by virtue of filing their complaint.

B.

Plaintiffs next argue the trial court erred in enforcing the arbitration agreement in favor of Atlas, Genther, and Trickett . Plaintiffs assert they only agreed to arbitrate with Cedar Grove—not with Atlas, Genther, and Trickett. Plaintiffs contend they did not waive their right to a jury trial as to any claims against these non-signatory defendants. They claim they cannot be compelled to arbitrate their claims as to Atlas, Genther, and Trickett without their explicit "assent" to do so. They maintain that each arbitration agreement states it is between Cedar Grove and plaintiffs and does not extend to include employees, subsidiaries, parent companies, or related joint employers of Cedar Grove. They further assert Atlas, Genther, and Trickett are not third-party beneficiaries and

10

have no standing to enforce the arbitration agreement. Plaintiffs also assert the trial court misapplied the holdings of <u>Alfano</u>,[6] <u>Epix</u>,[7] and <u>Hirsch</u>.[8]

Defendants counter that all the parties consented to arbitration. They assert plaintiffs "expressly intended, and consented to, arbitrate all the claims related to, or arising from, their employment and/or the termination thereof—which indisputably includes all of their claims . . . which specifically names Atlas, Trickett, and Genther—by entering into the [a]rbitration [a]greements." Defendants rely on <u>Wasserstein v. Kovatch</u>, which held that "[n]on-signatories of an arbitration agreement may be bound by the agreement under contract and agency principles." 261 N.J. Super. 277, 286 (App. Div. 1993).

Both parties recognize <u>Alfano</u>, <u>Epix</u>, and <u>Hirsch</u> involved different facts and did not squarely address the question presented here because those cases did not involve the question of whether non-signatory defendant/agents were entitled to arbitration as agents of the signatory defendant/principal.

---

[6] <u>Alfano v. BDO Seidman, LLP</u>, 393 N.J. Super. 560 (App. Div. 2007).

[7] <u>EPIX Holdings Corp. v. Marsh & McLennan Cos.</u>, 410 N.J. Super. 453 (App. Div. 2009).

[8] <u>Hirsch v. Amper Fin. Servs., LLC</u>, 215 N.J. 174 (2013).

Nevertheless, we derive guidance from the general principles articulated in Hirsch and Alfano. In Hirsch, 215 N.J. at 188-89, we noted:

> The United States Supreme Court has recognized that, in the context of arbitration, "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third party beneficiary theories, waiver and estoppel.'" Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009) (emphasis omitted) (quoting 21 Williston on Contracts § 57:19, at 183 (4th ed. 2001)). In other words, in assessing whether parties can be compelled to arbitrate, courts can use principles of contract law even in the absence of an express arbitration clause.
>
> [(citation reformatted).]

The Hirsch Court further noted, "it must be acknowledged that, as a matter of New Jersey law, courts properly have recognized that arbitration may be compelled by a non-signatory against a signatory to a contract on the basis of agency principles." Id. at 192 (citing Alfano, 393 N.J. Super. at 569-70).

We recognized these principles in Wasserstein. There, the plaintiff homeowners "brought suit . . . against the principals of Guild (the general contractor), rather than against Guild [itself], the corporation with which they had the construction contract which contained an arbitration clause." Wasserstein, 261 N.J. Super. at 281. A non-signatory subcontractor separately sued Guild and the plaintiffs in a separate suit. Ibid. A sub-subcontractor

separately sued the subcontractor. Ibid. The suits were consolidated. Ibid. The arbitration agreement between the plaintiffs and Guild stated that "[a]ll claims or disputes between the [c]ontractor and the [o]wner arising out or relating to the [c]ontract . . . shall be decided by arbitration." Id. at 282. The subcontractor, who did not have an arbitration agreement with the plaintiffs, filed a motion to "compel arbitration of all . . . disputes between all parties." Id. at 281. Although we also referenced a contract provision which provided the subcontractors "all rights, remedies and redress afforded to the [c]ontractor" under the agreement, id. at 287, we further noted:

> the claims [were] all subsumed in the contract dispute and, hence [were] subject to the arbitration [agreement] as required by that contract. Thus, the individual defendants . . . [were] entitled to arbitration as agents of Guild, even though they had not individually signed an arbitration agreement. All claims against the non-signatory defendants stemmed from their actions relating to or arising out of the performances of the contract by Guild. Non-signatories of an arbitration agreement may be bound by the agreement under contract and agency principles. A contrary view would only subvert the policy of favoring arbitration and allow avoidance of an agreement to arbitrate merely by naming the principals of the corporation or non-signatory parties in a complaint.
>
> [Id. at 285-86 (internal citations omitted).]

13

When addressing a motion to compel arbitration, a court must determine: (1) whether a valid arbitration agreement exists; and (2) whether the dispute falls within the scope of the agreement. See Martindale, 173 N.J. at 83, 92. As to the second prong, the trial court here found "there is no question [p]laintiffs' claims arise out of their employment with Cedar Grove and thus [fell] within the scope of the arbitration agreement." After canvassing the caselaw relied on by the parties, the trial court noted that the Hirsch Court stated "[t]he appropriate analysis would have focused on the agency relationship between the parent and the subsidiary . . . in relation to their intertwinement with the plaintiff's claims and the relevant contract language." Hirsch, 215 N.J. at 193.

Recognizing the Supreme Court's rejection of the intertwinement theory alone as a sufficient basis for a non-signatory to compel arbitration, the trial court noted the relationship of the entities in Hirsch were "entirely separate from each other with no other relationship and connection except through the plaintiff's claims." By contrast, the trial court noted that here, "there is a clear agency relationship . . . between Cedar Grove and Atlas because Cedar Grove expressly hired Atlas to perform management serv[ices] for its business. Without Cedar Grove, Atlas would have no involvement in this case whatsoever."

14                                                                    A-1133-23

The court further observed that "Atlas . . . [Genther, and Trickett] were acting as agents for Cedar Grove when [p]laintiff[s'] claims arose. Thus requiring [p]laintiffs to arbitrate all of their claims against [defendants] . . . in arbitration would not violate any principles of contract theory or equity." The court concluded its decision was not based "solely [on] 'the connection between the parties and the claims' . . . but [instead] by defendants' agency relationships with each other."

Plaintiffs attempt to distinguish Epix and Alfano because there, the "signatory agents acted on behalf of their non-signatory principals," whereas here "the signatory principal is attempting to act on behalf of the non-signatory agents." They assert the trial court erred by inferring that "a non-signatory agent can enforce an agreement between a principal and [a] third party" because "the actions of an agent may get imputed to its principal," but the actions of a principal cannot be imputed to an agent. This argument is unpersuasive.

Plaintiffs agreed "to submit any and all disputes arising out of, or relating to, [their] employment with [Cedar Grove], and/or the termination of that employment, to arbitration." The trial court correctly determined the claims against Atlas, Genther, and Trickett are encompassed by that provision. The allegations in plaintiffs' complaint unquestionably arise from their employment

15

and termination from Cedar Grove and implicates the conduct of Cedar Grove's agents—Atlas, Genther, and Trickett. Cedar Grove, as an entity, can only act through its agents. That is, but for plaintiffs' employment with Cedar Grove, there would be no cause of action against any parties in this matter as the claims asserted by plaintiffs stem from their employment with Cedar Grove. The trial court properly afforded the agents the benefits of the arbitration agreement given their agency status, particularly in view of the broad language of the agreement compelling arbitration of "any and all disputes arising out of, or relating to" plaintiffs' employment. Because Cedar Grove is bound by the arbitration agreement, its agents are also covered under the agreement.

We find guidance from the First Circuit Court of Appeals, which addressed this issue in Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1 (1st Cir. 2014). The court there addressed a similar arbitration provision in which the plaintiff and Verizon agreed to arbitrate "any controversy or claim arising out of . . . this agreement." Id. at 4. Like the arbitration agreement executed by Cedar Grove and plaintiffs here, the agreement did not specifically reference Verizon's employees or agents in the arbitration clause. Ibid. Nevertheless, the court rejected the plaintiff's claim that arbitration was not

16

required because the Verizon employee it named was not a signatory to the contract containing the arbitration clause. Id. at 10. The court noted:

> Indeed, a number of our sister circuits have addressed this issue, and all have held that an agent is entitled to the protection of her principal's arbitration clause when the claims against her are based on her conduct as an agent. When the non-signatory party is an employee of the signatory corporation and the underlying action in the dispute was undertaken in the course of the employee's employment, these circuits have fashioned, uniformly, a federal rule designed to protect the federal policy favoring arbitration. That rule, founded on general state law principles of agency, is that when "a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121 (3d Cir. 1993). Such a rule is necessary . . . because a corporate entity or other business can only operate through its employees and an arbitration agreement would be a meaningless arrangement if its terms did not extend to them. See id. at 1122. Any other rule, in the view of these courts, would permit the party bringing the complaint to avoid the practical consequences of having signed an agreement to arbitrate; naming the other party's officers, directors or employees as defendants along with the corporation would absolve the party of all obligations to arbitrate.
>
> [Id. at 11 (emphasis in original).]

We are satisfied the arbitration agreement here included the non-signatory defendants given that the causes of action arose from plaintiffs' employment

17                                                                                    A-1133-23

with Cedar Grove. To hold otherwise, under the facts presented here, would allow plaintiffs to circumvent the agreement by naming non-signatory parties or even signatory parties in their individual capacity. Cedar Grove can only act through its agents, and the trial court rendered a sensible interpretation of the contract allowing the agents of Cedar Grove to rely on the arbitration agreement. The alleged wrongful acts relate to Atlas, Genther, and Trickett's behavior as agents of Cedar Grove. The language of the arbitration agreement makes clear the parties' intent was to arbitrate all disputes arising from plaintiffs' employment or termination, and the contract therefore extended to Atlas, Genther, and Trickett based on their agency relationship with Cedar Grove.

To the extent we have not specifically addressed any other contentions raised by plaintiffs, they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1133-23