**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0514-21

JESSICA SCIARETTA,

     Plaintiff-Respondent,

v.

DOMINIC SCIARETTA,

     Defendant-Respondent,

and

DONALD J. SCIARETTA,
trustee for the DONALD
J. SCIARETTA FAMILY
DYNASTY TRUST AGREEMENT
OF 2003,

     Defendant-Appellant.

_____

Argued October 4, 2022 – Decided October 21, 2022

Before Judges Gilson, Rose, and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0682-20.

Gregory J. Hazley argued the cause for appellant (DeCotiis, Fitzpatrick, Cole & Giblin, LLP, attorneys; Benjamin Clarke and Gregory J. Hazley, on the briefs).

Bilal Hill argued the cause for respondent Jessica Sciaretta.

PER CURIAM

Plaintiff Jessica Sciaretta sued her husband, defendant Dominic Sciaretta, for divorce. She also asserted claims against Dominic's father, defendant Donald Sciaretta, who is the trustee of a family trust that owns the marital home where Jessica and Dominic had lived.[1] Before their marriage, Jessica and Dominic had signed a prenuptial agreement that stated Jessica would receive the marital home if the parties got divorced. The prenuptial agreement also contained an arbitration provision.

Donald appeals from an order compelling him to arbitration. He argues that he is not a party to the prenuptial agreement. The family court reasoned that Jessica had sufficiently alleged facts to support claims of promissory and equitable estoppel against Donald and Jessica had reasonably relied on the promise that she would receive the marital home. Accordingly, the family court held that Donald could be compelled to arbitration as a third party bound to the

---

[1] To avoid confusion, and meaning no disrespect, we use the parties' first names because they share the same last name.

A-0514-21

prenuptial agreement, including its arbitration provision. Because Donald disputes Jessica's allegations of promissory and equitable estoppel, we reverse and remand.

On remand, the family court is to conduct an evidentiary hearing to determine if Donald is bound to the prenuptial agreement. If the court finds that Donald is bound, then all parties can be compelled to arbitration. If the court finds that Donald is not bound to the arbitration provision, then the disputes between Jessica and Dominic can proceed to arbitration and the arbitrator will determine what impact, if any, the absence of Donald's and the trust's participation in the arbitration has on the disputes between Jessica and Dominic.

I.

Jessica and Dominic were married in April 2015.[2] They have three children, one of whom was born in 2016, and twins born in 2018.

Shortly before their marriage, Jessica and Dominic signed a premarital agreement (the prenuptial agreement). Among other things, the prenuptial agreement stated that Jessica and Dominic each waived "any right to a division of assets that would otherwise arise by reason of the [m]arriage . . . as well as

_____

[2] We summarize the facts relevant to the order compelling arbitration. In doing so, we make no factual determinations and recognize that certain facts are in dispute.

A-0514-21

any right to receive alimony or spousal support" and that Jessica would "receive title to the [marital home,]" as well as "exclusive occupancy of the [marital home]" "[i]n the event of the [c]essation of the [m]arriage . . . so long as there is a child or children born to, or adopted by" Jessica and Dominic.

The prenuptial agreement also provided that Jessica and Dominic were to "submit all claims and disputes arising out of or related to [the prenuptial agreement] and the relationships between [Jessica and Dominic] contemplated by [the prenuptial agreement] to final and conclusive arbitration" and that the arbitration would be governed by the New Jersey Arbitration Act, (NJAA), N.J.S.A. 2A:23B-1 to -36.

In anticipation of their marriage, the Donald J. Sciaretta Family Dynasty Trust Agreement of 2003 (the Family Trust) purchased a house in Peapack, New Jersey where Jessica and Dominic lived during their marriage (the marital home). Donald is the trustee and settlor of the Family Trust, and the Family Trust holds title to the marital home.

In February 2020, Jessica filed a complaint for divorce against Dominic. Thereafter, she filed an amended complaint asserting claims of promissory and equitable estoppel against Donald as trustee of the Family Trust. Donald moved to dismiss Jessica's claims against him, arguing those claims were barred as a

matter of law because he could not be compelled to make distributions from the Family Trust. Jessica opposed that motion and cross-moved to file a second amended complaint.

In her proposed second amended complaint, Jessica alleged that Donald had been involved in the negotiation of the prenuptial agreement because Dominic had told her that Donald required Jessica to sign the prenuptial agreement before their marriage. Jessica also asserted that Dominic had told her that Donald had agreed that the marital home would be transferred to her in the event of divorce. She pointed out that Dominic was represented in the negotiations of the prenuptial agreement by an attorney who had represented Donald for years and that the attorney had drafted the Family Trust documents. In addition, Jessica filed a certification stating that she would not have signed the prenuptial agreement if she had not been assured that the marital home would be transferred to her.

Donald and Dominic each filed certifications in opposition to Jessica's request to file a second amended complaint. Donald certified that prior to 2020, he had not seen the prenuptial agreement and did not have any knowledge of its contents. Donald also certified that he did not make any promises to Jessica or Dominic concerning the marital home and that, throughout the duration of their

5

marriage, neither Jessica nor Dominic ever requested that the marital home be transferred to them.

Dominic certified that he never had conversations with his father regarding the prenuptial agreement or the transfer of the marital home to Jessica. Dominic also certified that he never gave his attorney permission to discuss the prenuptial agreement with Donald.

On December 4, 2020, the family court issued an order that granted Donald's motion to dismiss the claims against him and permitted Jessica to file a second amended complaint, without claims against Donald. The family court also ordered that the disputes between Jessica and Dominic were to proceed to arbitration in accordance with the prenuptial agreement.

We granted Jessica's motion for leave to appeal the order dismissing her claims against Dominic and denying her motion to amend the complaint with claims against Donald. We then reversed that order holding that Jessica had pled facts in her amended complaint and her proposed second amended complaint sufficient to support her claims of promissory and equitable estoppel against Donald. Sciaretta v. Sciaretta, No. A-1343-20 (App. Div. June 16, 2021) (slip op. at 13-16). We did not express any opinion about the merits of Jessica's claims and pointed out that to survive a motion to dismiss Jessica did not have

6

to prove her claims; rather, she had to make allegations which, if proven, would constitute valid claims.  Id. at 15.

Following our decision and remand, Jessica attempted to commence arbitration in accordance with the family court's December 4, 2020 order. Donald, however, refused to participate in the arbitration, arguing that he was not a party to the prenuptial agreement.  In response, Jessica filed a motion to compel Donald to submit to arbitration or, in the alternative, to have the divorce proceedings heard in the family court.  Dominic and Donald opposed that motion.  Dominic insisted that the divorce proceedings continue in arbitration. Donald contended that Jessica's claims against him should be heard in court.

On September 7, 2021, the family court issued a written opinion and order granting Jessica's motion to compel Donald to participate in arbitration.[3]  The court recognized that Donald was not a signatory to the prenuptial agreement and that Jessica had not proven detrimental reliance at that point in the proceedings.  The family court reasoned, however, that Donald should be compelled to arbitration because Jessica sufficiently alleged facts demonstrating

_____

[3] Originally, the order was dated August 27, 2021, but, thereafter, the family court clarified that the parties were not served with the order until September 7, 2021.  The court, therefore, clarified that the order will be deemed to have been filed and served on September 7, 2021.

A-0514-21

she had detrimentally relied on Donald's promise regarding the marital residence and that the promise was integral to the resolution of the divorce matter. In addition, the family court reasoned that Donald was the only person who could provide Jessica's bargained-for relief and that without Donald's participation as the trustee of the Family Trust, the arbitration might become a forum without a remedy.

"Orders compelling arbitration are deemed final for purposes of appeal." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013) (citing R. 2:2-3(a); GMAC v. Pittella, 205 N.J. 572, 587 (2011)). Donald now appeals from the order compelling him to submit to arbitration. Donald, however, did not seek a stay of the arbitration. Instead, he refused to sign an agreement with the arbitrator. Jessica filed a motion to compel Donald to sign the arbitration agreement and to pay a share of the arbitrator's fees. In March 2022, the family court issued an order and ruled that Donald did not have to sign the arbitration agreement, but that he would be bound by the arbitration. We granted Jessica's motion to include that March 2022 order in the record on this appeal.

A-0514-21

## II.

On appeal, Donald argues that the family court erred in compelling him to arbitration because he never agreed to arbitrate the claims Jessica has asserted against him. Donald contends that he never signed the prenuptial agreement and that he should not be compelled to arbitration on theories of estoppel because he disputes the facts supporting Jessica's estoppel claims. Donald also contends that Jessica's claims against him are distinct from her claims against Dominic and that they are not integral to the divorce proceedings.

We use a de novo standard of review when determining the enforceability of an arbitration agreement. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019) (citing Hirsch, 215 N.J. at 186). Moreover, the question of whether a party is bound to arbitrate a dispute is a question of law, and we conduct a plenary review of such legal issues. See Morgan v. Sanford Brown Inst., 225 N.J. 289, 302-03 (2016) (citing Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014)); Hirsch, 215 N.J. at 186.

Arbitration is fundamentally a matter of contract. NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011). Accordingly, the NJAA allows arbitration agreements to be regulated under general contract principles, and a court may enforce or invalidate an arbitration

A-0514-21

clause under principles of contract law. N.J.S.A. 2A:23B-6(a); Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 133-34 (2020).

The NJAA enunciates a policy favoring arbitration. Atalese, 219 N.J. at 440. The preference for arbitration, however, "is not without limits." Hirsch, 215 N.J. at 187 (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001)). Generally, parties "'cannot be required to submit to arbitration any dispute which [they have] not agreed so to submit.'" Angrisani v. Fin. Tech. Ventures, L.P., 402 N.J. Super. 138, 148 (App. Div. 2008) (quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986)). "An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Atalese, 219 N.J. at 442 (quoting NAACP of Camden Cnty. E., 421 N.J. Super. at 424). "[B]ecause arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of [the] parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" Id. at 442-43 (quoting NAACP of Camden Cnty. E., 421 N.J. Super. at 425).

An arbitration agreement can be enforced by or against a non-signatory through principles of contract law, including equitable estoppel or agency.

10

Hirsch, 215 N.J. at 188-89, 192-93; Alfano v. BDO Seidman, LLP, 393 N.J. Super. 560, 568-69 (App. Div. 2007). "To establish equitable estoppel, parties must prove that an opposing party 'engaged in conduct, either intentionally or under circumstances that induced reliance, and that [they] acted or changed their position to their detriment.'" Hirsch, 215 N.J. at 189 (alteration in original) (quoting Knorr v. Smeal, 178 N.J. 169, 178 (2003)). "In other words, equitable estoppel . . . requires detrimental reliance." Ibid. It "cannot be applied solely because the parties and claims are intertwined . . . ." Id. at 193. Moreover, "[e]quitable estoppel should be used sparingly to compel arbitration." Id. at 179. It is "more properly viewed as a shield to prevent injustice rather than a sword to compel arbitration." Id. at 180.

The prenuptial agreement contains a clear and enforceable arbitration provision. It states that Jessica and Dominic "shall submit all claims and disputes arising out of or related to [the prenuptial agreement] and the relationships between [Jessica and Dominic] . . . to final and conclusive arbitration . . . ." It is undisputed that Donald was not a signatory to the prenuptial agreement. Nevertheless, if Donald knew of the prenuptial agreement and its promise concerning the marital home, Jessica would have the grounds to compel him to arbitration based on estoppel. See id. at 189, 193.

11

The family court reasoned that Donald could be compelled to arbitration because Jessica sufficiently alleged facts demonstrating she had detrimentally relied on the promise that she would receive the marital home. Donald and Dominic, however, dispute Jessica's factual assertions. Consequently, before Donald can be compelled to arbitration, the family court must hold an evidentiary hearing and determine whether there is a factual basis to compel Donald to arbitration. See id. at 193 ("[E]quitable estoppel does not apply absent proof that a party detrimentally rel[ied] on another party's conduct."). Given the parties' conflicting certifications, that determination will require the family court to make credibility findings.

Donald also argues that Jessica's claims against him are not integral to the resolution of the divorce proceedings. In that regard, Donald contends that the Family Trust's ownership of the marital home and its financial support of Jessica and Dominic are only some of the issues that will need to be resolved during the divorce proceedings. Donald's argument mischaracterizes and minimizes the centrality of the marital home in the divorce proceedings. Donald, as trustee of the Family Trust, can provide Jessica with the marital home as called for in the prenuptial agreement. Nevertheless, although Jessica's claims against Donald are intertwined with her claims against Dominic, the intertwinement of the

12

claims is insufficient, by itself, to compel Donald to submit to arbitration. See id. at 192-93. The Court has cautioned that "when parties have not expressly agreed to arbitrate their disputes . . . careful scrutiny is necessary to determine whether arbitration is nonetheless appropriate." Id. at 196.

We therefore reverse the September 7, 2021 order compelling Donald to submit to arbitration. We remand and direct that the family court conduct an evidentiary hearing to determine if there are facts to support Jessica's claims of estoppel. Before us, Jessica also argued that she could compel Donald to arbitration based on agency. "Agency has been applied to bind nonsignatories to arbitration agreements." Alfano, 393 N.J. Super. at 569; see also Hirsch, 215 N.J. at 192 (recognizing that New Jersey law allows arbitration to be compelled based on agency). The family court did not rely on agency in its September 7, 2021 order. Provided that the parties are given the opportunity to conduct reasonable discovery on the issue of agency, and the family court makes factual findings, we perceive no reason why the family court could not also consider agency as a ground for compelling all parties to arbitration.

The evidentiary hearing in the family court should take place before the arbitration hearing. The parties have informed us that the arbitrator has scheduled the arbitration hearing for December 2022. We encourage the family

13

court to conduct the evidentiary hearing as soon as possible. The factual contentions set forth in the certifications of Jessica, Donald, and Dominic do not require extensive discovery, and the family court has the discretion to expedite and limit discovery. See Major v. Maguire, 224 N.J. 1, 24 (2016) (noting that "Family Part judges have broad discretion to permit, deny, or limit discovery in accordance with the circumstances of the individual case"). Accordingly, the family court should expeditiously conduct a hearing and make findings of facts and conclusions of law on whether Donald should be compelled to arbitration. If Donald is compelled to arbitration, then the family-court action should be stayed pending the completion of the arbitration. N.J.S.A. 2A:23B-7(g); see also GMAC, 205 N.J. at 583, n.7 (explaining that N.J.S.A 2A:23B-7(g) "only enable[s] [a] trial court to 'stay' the claims").

If Donald is not compelled to arbitration, any remaining claims against him should be stayed while Jessica and Dominic complete the arbitration. Although not mandatory, when significant overlap exists between parties and issues, claims against parties who have not agreed to arbitrate should be stayed pending the arbitration. See Alfano, 393 N.J. Super. at 577; N.J.S.A. 2A:23B-7(g) (explaining that "[i]f the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the

arbitration").  The arbitrator will need to determine what effect the lack of Donald's participation has on the enforceability of all or any part of the prenuptial agreement.

Reversed and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0514-21