**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3007-23

ALONSO CARVAJAL
CHALARCA, and JUAN
CARLOS ROMERO SALAZAR,

      Plaintiffs-Appellants,

v.

ASEEM NAYEEM KHAN, and
ATTS, INC.,

      Defendants-Respondents,

and

ISGEC HEAVY ENGINEERING
LTD., and INGENIERIA
MAQUINARIA Y EQUIPOS
DE COLOMBIA SOCIEDAD
POR ACCIONES SIMPLIFICADA,

      Defendants.

_____

Submitted December 2, 2025 – Decided April 23, 2026

Before Judges DeAlmeida and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-3242-22.

Robert H. Bembry III, Robert T. Vance, Jr., (Law Offices of Robert T. Vance, Jr.) of the Pennsylvania bar, admitted pro hac vice, attorneys for appellants (Robert H. Bembry, III and Robert T. Vance, Jr., on the brief).

Sherman Silverstein Kohl Rose & Podolsky, attorneys for respondents (Jeffrey P. Resnick, on the brief).

PER CURIAM

Plaintiffs Alonso Carvajal Chalarca and Juan Carlos Romero Salazar appeal from two Law Division orders: (1) the March 28, 2024 order granting summary judgment to defendants Aseem Nayeem Khan and ATTS, Inc. (ATTS) and dismissing with prejudice plaintiffs' claims for commercial sales commissions; and (2) the May 10, 2024 order denying in part, and granting in part, plaintiffs' motion for reconsideration of the March 28, 2024 order. We affirm.

I.

The following facts are derived from the summary judgment record. ATTS was a New Jersey corporation with its principal place of business in the State. The company was a global supplier of parts, services, and specialized

eco-friendly engineering solutions for the power generation and turbo machinery industries. Khan was the President of ATTS.

ATTS Energia, S.A. (ATTS Energia) and A.N. Khan y Compania S.C.A. (A.N. Khan) were wholly owned subsidiaries of ATTS with their principal places of business in Colombia. Chalarca and Salazar were citizens and residents of Colombia.

Beginning in 2007, ATTS Energia and A.N. Khan employed Chalarca as a salesperson. His compensation included commissions on his direct sales.

Defendant ISGEC Heavy Engineering, Ltd., a/k/a ISGEC John Thompson (ISGEC) was an Indian company that manufactured and supplied sugar cane milling equipment, machinery used for sugar-cane based ethanol products, and equipment for sugar-cane-based power cogeneration.

In or about 2008 and again in 2009, ATTS and ISGEC executed agency agreements under which ATTS served as ISGEC's exclusive agent in Colombia and Mexico, as well as other countries, for the purpose of locating potential customers for ISGEC. In return, ISGEC agreed to pay ATTS a commission on orders placed to ISGEC through the efforts of ATTS.

On July 11, 2011, A.N. Khan hired Salazar as a project engineer. Salazar's compensation included commissions on his direct sales.

3

On May 13, 2013, ATTS Energia and A.N. Khan terminated Chalarca. On July 2, 2013, Chalarca filed suit in a Colombian court against Khan, ATTS Energia and A.N. Khan asserting various claims, including allegations the entities owed him sales commissions (the Colombia Action).

On January 6, 2016, ATTS filed claims against ISGEC in the International Court of Arbitration, International Chamber of Commerce in London (the ICC Arbitration). ATTS alleged, among other things, there were fourteen instances in which ISGEC made direct sales to its customers, thereby depriving ATTS of the opportunity to make those sales on ISGEC's behalf and receive commissions. ATTS claimed $14.5 million in damages.

ISGEC denied the allegations, and filed counterclaims against ATTS. ISGEC in part alleged the parties agreed ATTS would receive commissions for only those sales it made directly. ISGEC also alleged ATTS misrepresented its capabilities when it negotiated the agency agreements, and did not generate sufficient business opportunities for ISGEC. ISGEC estimated its losses to be approximately $20 million.

On January 8, 2016, Salazar resigned his employment.

According to Chalarca, in March and April 2017, Khan contacted him and secured his agreement to assist Khan and ATTS in the ICC Arbitration.

4

According to Chalarca, based on his conversations with Khan, Chalarca and Salazar "expected" if ATTS "prevailed in the arbitration and received payments" from ISGEC, ATTS would pay them the commissions they would have earned during their employment had the amount recovered been the proceeds of sales on behalf of ISGEC.

On May 25, 2017, after a trial, the court in the Colombia Action entered a judgment awarding Chalarca damages. According to defendants, the court in the Colombia Action rejected Chalarca's claim for unpaid commissions.

On January 24, 2018, ATTS and ISGEC settled their claims in the ICC Arbitration. A final consent award required ISGEC to pay ATTS $1.9 million.

On October 28, 2019, a Colombian appellate court upheld the judgment in the Colombia Action. The court's opinion noted, in relevant part, "the appeal from [Chalarca], in what [(sic)] deals with the payment of (commercial) (commercial) [(sic)] commissions, will not come through."

On July 14, 2020, Chalarca filed a complaint in the Law Division against Khan seeking to enforce the judgment in the Colombia Action (the Enforcement Action). He did not allege he was entitled to commissions based on the $1.9 million payment ATTS recovered in the ICC Arbitration.

5

On April 5, 2022, the Enforcement Action was dismissed with prejudice pursuant to a settlement agreement and release (Settlement Agreement). The Settlement Agreement, which defines Chalarca as "Plaintiff[,]" Khan as "Defendant[,]" and the Enforcement Action as the "New Jersey Action[,]" provided, in relevant part:

> In consideration of the payment set forth in Section 2.0 of this Agreement, Plaintiff, for himself and his heirs, executors, agents, representatives, attorneys, parents, predecessors, successors, subsidiaries, affiliates, assigns, employees, shareholders, officers, directors, agents, representatives, insurers and reinsurers hereby completely release[s] and forever discharge[s] the Defendant and his executors, heirs, administrators, representatives, attorneys, parents, predecessors, successors, subsidiaries, affiliates, assigns, employees, shareholders, officers, directors, agents, representatives, insurers and reinsurers, including but not limited to, A.N. Khan . . . ., and ATTS Energia . . . from all claims, obligations, actions, suits, petitions, damages, causes of action, and demands of whatsoever kind or nature, legal, administrative or equitably based, arising under any federal, state, or local statute, code, rule, or common law, or any other theory of recovery, that Plaintiff now has or may have against the Defendant from the beginning of the world to the date hereof that were asserted or could have been asserted in the Columbia (sic) Action and the New Jersey Action.

On December 7, 2022, plaintiffs filed a Complaint in the Law Division in the present action against Khan, ATTS, ISGEC, and defendant Ingenieria

6

Maquinaria y Equipos de Colombia Socieda por Acciones Simplificada (Ingenieria). They alleged they were not paid commissions to which they were entitled during their employment with ATTS Energia and A.N. Khan, including for the sales that were the subject of the ICC Arbitration. Specifically, Chalarca sought a twenty-five-percent commission, and Salazar sought a five-percent commission on the amounts received by ATTS and/or its subsidiaries from the sales. In addition, Chalarca alleged he agreed to assist Khan and ATTS in the ICC Arbitration in exchange for Chalarca and Salazar receiving commissions on any recovery by ATTS in that action.

Plaintiffs did not allege personal liability on the part of Khan, that he engaged in fraudulent acts, or that he abused the corporate structure in his role as President of ATTS, or as owner or officer of ATTS Energia and A.N. Khan. Nor did plaintiffs allege Khan was party to any agreement with them in his personal capacity.[1]

During discovery, plaintiffs identified seven transactions for which they alleged they were entitled to commissions. Plaintiffs sought $629,809.07 in commissions for six transactions that predated the ICC Arbitration, and $203,490 in commissions from ATTS's recovery in the ICC Arbitration.

---

[1] Plaintiffs did not serve ISGEC and Ingenieria with the complaint.

A-3007-23

On February 21, 2024, Khan and ATTS moved for summary judgment. They argued: (1) plaintiffs' claims with respect to the six transactions that predated the ICC Arbitration were barred by the statute of limitations because those claims accrued when plaintiffs' employers received payments on those transactions from March 31, 2011, to December 1, 2014, more than six years prior to filing of the complaint; (2) Chalarca's claims were barred by collateral estoppel and res judicata because he settled both the Colombia Action and the Enforcement Action and released defendants from all claims that were or could have been alleged in those actions; (3) Chalarca's claims were barred by the entire controversy doctrine; (4) Khan was entitled to summary judgment because plaintiffs made no allegations supporting personal liability for his acts on behalf of ATTS or its subsidiaries; and (5) ATTS was entitled to summary judgment because it was not responsible for the obligations of its subsidiaries which employed plaintiffs.

The court assigned the summary judgment motion a return date of March 28, 2024. Plaintiffs' opposition to the motion, if any, was due on or before March 18, 2024. See R. 4:46-1 ("[O]pposing affidavits, certifications, briefs, and cross-motions for summary judgment, if any, shall be served and filed not later than [ten] days before the return date . . . .").

A-3007-23

At 5:50 p.m. on March 27, 2024, the day before the return date, and nine days after the filing deadline, plaintiffs, without leave of court, filed opposition to the summary judgment motion. They did not move to adjourn the motion or provide an explanation for the late filing.

On March 27, 2024, the court issued an oral decision granting the motion, which it considered unopposed. It appears the court was unaware of plaintiffs' untimely opposition. The court concluded plaintiffs' claims were time barred. The court found "[t]he commissions were on money from customers earned from March 31st to December 1st which is beyond the six[-]year period." The court did not identify the years in which it found funds were received on the transactions, but the court appears to have adopted defendants' argument the payments were made from March 31, 2011, to December 1, 2014.

The court also concluded collateral estoppel barred plaintiffs' claims, given the resolution of those claims in the Colombia Action. The court did not address the fact that only Chalarca was a plaintiff in the Colombia Action. In addition, the court found, "[t]here is also a collateral estoppel issue that the Colombian judgment [and] signed agreement bars from bringing this action (sic)." The meaning of this conclusion is unclear, but it appears to refer to the Settlement Agreement resolving the Enforcement Action. If so, the court did

9

not address the fact that Chalarca was the only plaintiff who was a party to the Settlement Agreement.

Next, the court stated:

> There's also a claim that they're barred by the entire [c]ontroversy [d]octrine, and again, these are just some actions going from the main case which could have been included in the original action, that they're again seeking commissions that are – were first sought in that action.

The court made no further findings with respect to defendants' entire controversy doctrine argument. The court also found no basis in the record on which to conclude Khan was personally liable for plaintiffs' claims. The court concluded plaintiffs produced no evidence Khan acted outside his role as a corporate officer or engaged in fraud or tortious conduct.

Finally, the court found plaintiffs did not establish ATTS was responsible for the liabilities of its subsidiaries for unpaid sales commissions. The court concluded the "liability of the parent company is generally imposed only when there's abuse of privilege to perpetrate a fraud or injustice." The court found plaintiffs produced no evidence of that nature.

On March 28, 2024, the court issued a second oral decision on the motion. The court acknowledged its receipt of plaintiffs' untimely opposition and found the summary judgment motion

was heard yesterday as an unopposed [m]otion. Yesterday at 5:50 p.m., opposition was filed.

In opposition, there was no explanation for lateness, no request for oral argument, and I know the Appellate Division has said over and over, that we're to consider late filings. However, this is past the point of the late filing. [Six o'clock] after the close of the business day, Thursday, for a Motion Friday, which would give this [c]ourt or the moving attorney no opportunity to even – to review this or go over it and prepare a response. If more time was needed, the attorney could have picked up the phone and asked the other attorney to give him more time.

Late filing at 6 p.m. is beyond any reasonable explanation. I am not considering it and the [m]otion is granted for the reasons placed on the record.

A March 28, 2025 order memorialized the motion court's decision.

Plaintiffs subsequently moved for reconsideration of the March 28, 2025 order. In support of their motion, plaintiffs resubmitted their untimely opposition to the summary judgment motion. They made no argument the standards set forth in Rule 4:49-2 for reconsideration were satisfied, other than arguing the motion court should have considered their untimely opposition.

On May 9, 2024, the court issued an oral decision granting in part, and denying in part, the motion for reconsideration. The court concluded it would consider plaintiffs' untimely opposition to the summary judgment motion: "I stand by the fact that I shouldn't have to consider it based on this is just an

outrageous situation, but for argument purposes and appeal purposes, let's consider the merits of what was submitted."

First, the court vacated its finding plaintiffs' claims were barred by the statute of limitations. The court found the

> statute of limitations was the first aspect in this matter. It's noted the moneys from the customers received on March 31, 2011 through December 11th. The complaint was filed December 22nd which is well past the six[-]year period.
>
> Defendant asserts the cause of action [accrued] in July . . . 2016 when the employment relationship concluded and [d]efendant initiating (sic) a claim with the International Court of Arbitration for [c]ommissions . . . [a]nd then began to process these claims.
>
> Though, argument is that on April 16th, the claim for . . . commercial transaction [(sic)] had not yet [accrued] because ATTS was actively seeking payment from another party.
>
> On January 24th, ATTS and ISGEC entered into a final consent to pay the lot of the commissions, but there was some due [and] owing.
>
> Now as to the summary judgment issue, it is arguably . . . I don't know if it's much of an argument, but it does create an issue. One, it did [accrue] to benefit the (inaudible). I would vacate that finding. However, it doesn't change the fact that . . . summary judgment can and will be granted as to other issues.

12

The court found plaintiffs' claims were barred by res judicata based on Chalarca's unsuccessful attempt to recover commissions in the Colombia Action, and his subsequent unsuccessful appeal on the denial of his commission claims. In addition, the court found Chalarca released all claims for commissions he had against Khan, ATTS Energia, and A.N. Khan in the Settlement Agreement in the Enforcement Action.[2]

A May 10, 2024 order memorialized the motion court's decision. This appeal followed.

Plaintiffs argue the motion court erred because: (1) genuine issues of material fact precluded entry of summary judgment in favor of Khan and ATTS on all claims alleged in the complaint; (2) Chalarca's claims are not barred by res judicata or collateral estoppel because the Settlement Agreement resolving the Enforcement Action concerned only his claim for wages, salaries, vacations, pension fund deposits, social security, penalties, and fines as defined in a transaction agreement executed along with the Settlement Agreement; (3) Chalarca's claims are not barred by the entire controversy doctrine because the

---

[2] The court's decision referred only to "plaintiff" when discussing the Colombia Action and the Enforcement Action. We assume the court was referring to Chalarca, as he is the only plaintiff to have filed both of those actions. The court's decision made no reference of Salazar.

A-3007-23

commissions he seeks in this action were not sought in the Colombia Action and could not have been sought in that action because those claims did not accrue until, at the earliest, January 24, 2018, when ATTS and ISGEC settled the ICC Arbitration; (4) plaintiffs, while employed by ATTS's subsidiaries, worked for the benefit of ATTS, making ATTS liable for unpaid commissions owed to plaintiffs by ATTS Energia and A.N. Khan; and (5) it should have granted plaintiffs' motion for reconsideration. Plaintiffs do not argue the trial court erred when it concluded the record contains no evidence Khan is personally liable for plaintiffs' claims.[3]

## II.

We begin with plaintiffs' argument the motion court erred when it refused to consider their untimely opposition to defendants' summary judgment motion. Plaintiffs' argument is contradicted by the record. While the motion court initially declined to consider plaintiffs' untimely opposition when deciding defendants' summary judgment motion, the court reviewed plaintiff's opposition

---

[3] Plaintiffs also argue their claims are not barred by the statute of limitations. However, as noted above, the motion court, on reconsideration, found genuine issues of material fact precluded dismissal of the complaint on statute of limitations grounds. Defendants argue plaintiffs' claims are time-barred. They did not, however, file a cross-appeal from the May 10, 2024 order on the motion for reconsideration. We, therefore, offer no opinion with respect to whether plaintiffs' claims were time barred.

14

when deciding their motion for reconsideration. In fact, after considering plaintiffs' opposition, the court vacated its conclusion plaintiffs' claims were barred by the statute of limitations. We find no merit in plaintiffs' argument the court never considered the substance of their opposition to defendants' motion.

We turn to the motion court's grant of summary judgment to defendants on Chalarca's claims. We review a grant of summary judgment de novo, applying the same standard as the motion court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the motion court's legal analysis or statutory interpretation. RSI Bank v.

15

Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

Self-serving assertions that are unsupported by evidence are insufficient to create a genuine issue of material fact. Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005), app. dism., 217 N.J. 591 (2006)). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

We agree with the motion court's conclusion Chalarca's claims were barred by the Settlement Agreement in the Enforcement Action. On April 5, 2022, eight months before filing the complaint in this matter, Chalarca executed the Settlement Agreement. In exchange for a payment from Khan, Chalarca agreed to "completely release and forever discharge" Khan, A.N. Khan, and ATTS Energia "from all claims, obligations, actions, suits, petitions, damages, causes of action and demand of whatever kind or nature" arising under any

16

"statute, code, rule, or common law, or any other theory of recovery that" Chalarca "now has or may have against" Khan or the ATTS subsidiaries "from the beginning of the world to the date" of the Settlement Agreement "that were asserted or could have been asserted in the" Colombia Action or the Enforcement Action.

"An agreement to settle litigation is 'governed by [the general] principles of contract law.'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016) (alteration in original) (quoting Brundage v. Est. of Carambio, 195 N.J. 575, 600-01 (2008)).  Our review of the court's interpretation and construction of a contract is de novo.  Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014).  Our task is to "ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain." Celanese Ltd. v. Essex Cnty. Improvement Auth., 404 N.J. Super. 514, 528 (App. Div. 2009).  "Where the terms of a contract are clear, we enforce the contract as written and ascertain the intention of the parties based upon the language." Pollack v. Quick Quality Rests., Inc., 452 N.J. Super. 174, 187-88 (App. Div. 2017).  "[U]nambiguous contracts are to be enforced as written . . . ." Grow Co. v. Chokshi, 403 N.J. Super. 443, 464 (App. Div. 2008).

A-3007-23

The terms of the Settlement Agreement are clear. Chalarca waived all claims he asserted or could have asserted against Khan, ATTS Energia, and A.N. Khan in the Colombia Action or the Enforcement Action. At the time he filed the Colombia Action on July 2, 2013, Chalarca raised or could have raised all claims for commissions from sales that took place during his employment, including the transactions that were later the subject of the ICC Arbitration, to the extent he was aware of those transactions.

When Chalarca filed the Enforcement Action on July 14, 2020, the ICC Arbitration had been settled for more than two years. Chalarca admits he was aware of the transactions that were the subject of the ICC Arbitration. In fact, he alleges he agreed to assist Khan and ATTS in recovering funds from ISGEC for those transactions. Although Chalarca claims not to have been aware of the settlement of the ICC Arbitration, he conceded he "expected" as early as April 2017 to be paid commissions if ATTS had a recovery in the ICC Arbitration. Chalarca, therefore, had an obligation to raise in the Enforcement Action his claims for any commissions he believed were owed with respect to the transactions at issue in the ICC Arbitration and from any proceeds ATTS obtained in the arbitration. See Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009) (The entire controversy doctrine "embodies

the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.").

Most importantly, when Chalarca signed the Settlement Agreement on April 5, 2022, the ICC Arbitration had been settled for more than four years. Before executing a settlement agreement waiving his right to all claims that could have been asserted in the Colombia Action and Enforcement Action, Chalarca should have inquired into the status of the ICC Arbitration. He was aware of his expectation to be paid commissions if ATTS recovered funds in the ICC Arbitration. We see no basis on which to conclude the unequivocal terms of the Settlement Agreement did not include Chalarca's claim to be owed commissions for the transactions that were the subject of the ICC Arbitration and on ATTS's recovery in the arbitration.

We are not persuaded by Chalarca's argument the scope of the Settlement Agreement was circumscribed by what he describes as a transaction agreement executed around the time the parties executed the Settlement Agreement. The

19

only copy of the transaction agreement in the record is written in Spanish.[4]  In their brief, plaintiffs set forth what purports to be an English translation of a single paragraph of the transaction agreement.  The English recitation of the paragraph is not accompanied by a certified translation or a citation to the record.  According to Admin. Off. of the Cts., Admin. Directive #01-17, New Jersey Judiciary Language Access Plan (Jan. 10, 2017), "[u]nless otherwise permitted by the court, all evidentiary documents are to be presented in English and all non-English documents intended to be introduced into evidence must be accompanied by a certified translation."  The purported translation in plaintiffs' brief is not admissible as evidence and cannot be the basis for a denial of defendants' summary judgment motion.  We therefore affirm the May 10, 2024, and March 28, 2024 order to the extent they grant summary judgment in favor of defendants on all claims alleged by Chalarca.

We turn to the claims asserted by Salazar.  The motion court granted summary judgment to Khan based on plaintiffs' failure to produce any evidence Khan was personally liable for the commissions they claimed to have been

---

[4]  Plaintiffs' brief contains one citation to their appendix for the transaction agreement.  The documents appearing at the cited pages of the appendix, however, are Salazar's January 8, 2016 resignation letter, and the first two pages of the ICC final consent award.  We identified a document elsewhere in the appendix that appears to be the transaction agreement.

denied. Plaintiffs do not address this aspect of the motion court's decision in their brief. We therefore deem any arguments with respect to the grant of summary judgment to Khan waived. "[A]n issue not briefed is deemed waived." Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2026); Telebright Corp. v. Dir., N.J. Div. of Tax'n, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief).

The motion court granted summary judgment to ATTS was based on its conclusion plaintiffs produced no proof ATTS was liable for any commissions owed to plaintiffs by its subsidiaries, for whom plaintiffs worked. The entirety of plaintiffs' argument challenging this aspect of the motion court's decision follows:

> ATTS's contention that it should be dismissed from this lawsuit is nonsensical. Chalarca and Salazar worked for ATTS's subsidiaries for the benefit of ATTS, and thus both had a contract-in-fact with ATTS. Accordingly, basic principles or corporate liability indicate that ATTS is responsible to them for sums that could technically be owed by its subsidiaries.

Plaintiffs' theory of ATTS's liability is that they had a contract-in-fact with ATTS to pay them commissions. Plaintiffs cite no statute or legal precedent explaining the elements of a contract-in-fact and cite no record evidence in

21

support of their claim that such a contract existed. Nor do plaintiffs explain how such a contract would abrogate, amend, or supersede their employment contracts with ATTS Energia and A.N. Khan. We agree with defendants' argument that plaintiffs did not establish they had a contract-in-fact with ATTS to pay them commissions for sales during their employment with ATTS's subsidiaries. Nor did plaintiffs raise a genuine issue of material fact with respect to the existence of such a contract.

New Jersey adheres to the general principle that "an action on a contract cannot be maintained against a person who is not a party to it," Comly v. First Camden Nat'l Bank & Tr. Co., 22 N.J. Misc. 123, 127 (Sup. Ct. 1944), but recognizes that a parent corporation may be liable for the obligations of its subsidiary where the subsidiary acts as the "alter ego" of a parent corporation "to perpetrate fraud, to accomplish a crime, or otherwise to evade the law," Dep't of Env't Prot. v. Ventron Corp., 94 N.J. 473, 500 (1983). Additionally, "[w]hen one corporation acts as the agent of a disclosed principal corporation, the latter corporation may be liable on contracts made by the agent." Alfano v. BDO Seidman, LLP, 393 N.J. Super. 560, 569 (App. Div. 2007). In such a case, "[l]iability may attach to the principal corporation even though it is not a party

named in the agreement." Ibid. (quoting Phoenix Can. Oil Co. v. Texaco, Inc., 842 F.2d 1466, 1477 (3d Cir. 1988)).

In response to defendants' summary judgment motion, plaintiffs produced no evidence establishing ATTS was responsible under these precedents for their subsidiaries' contractual obligations to pay plaintiffs commissions. Salazar, therefore, cannot establish either Khan or ATTS are liable for the commissions he claims are due to him.

To the extent Salazar alleged to have had a contract with ATTS to receive commissions on ATTS's recovery in the ICC Arbitration, the motion record is bare of evidence of such an agreement. The totality of the evidence with respect to this claim is Chalarca's allegation to have made an oral agreement with Khan to assist Khan and ATTS in the ICC Arbitration, and his bald assertion that based on this conversation, Salazar "expected" to receive a commission on any recovery ATTS might obtain in the arbitration.

Even under the most generous interpretation of plaintiffs' allegations, Salazar cannot claim to have formed a contract with ATTS. At best, Chalarca alleged Salazar was a third-party beneficiary of a contract between Chalarca and ATTS. "The standard applied by courts in determining third-party beneficiary status is 'whether the contracting parties intended that a third party should

receive a benefit which might be enforced in the courts . . . .'" Reider Cmtys., Inc. v. Twp. of N. Brunswick, 227 N.J. Super. 214, 222 (App. Div. 1988) (alteration in original) (quoting Brooklawn v. Brooklawn Hous. Corp., 124 N.J.L. 73, 77 (E. & A. 1940)). "[T]he intention of contracting parties to benefit an unnamed third party must be garnered from an examination of the contract and a consideration of the circumstances attendant to its execution." Ibid. "The principle that determines the existence of a third[-]party beneficiary status focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement." Broadway Maint. Corp. v. Rutgers, The State Univ., 90 N.J. 253, 259 (1982) (footnote omitted). In response to defendants' summary judgment motion, Salazar produced no evidence demonstrating Khan or ATTS intended him to be a third-party beneficiary of a contract ATTS had with Chalarca or raising a genuine issue of material fact as to that claim.

We therefore affirm the May 10, 2024, and March 28, 2024 orders to the extent they grant summary judgment in favor of defendants on all claims alleged by Salazar against ATTS.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

24

A-3007-23